# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                 No. 22-CR-1171-JCH

ADRIAN GARCIA,

       Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are the following motions: (1) the United States' *Motion in Limine to Admit Victim's 911 Call and Transcript* (ECF No. 71); (2) Defendant's *Motion to Exclude Out-of-Court and In-Court Identifications, Physical or Clothing Descriptions Affected by Show-Up Identification Procedure, and Post-Arrest Statement* (ECF No. 72); and (3) the United States' *Motion to Exclude Testimony of Defense Expert at Trial* (ECF No. 62). The Court held an evidentiary hearing on August 29, 2024, regarding the motions. Having considered the motions, evidence, arguments, law, and being fully advised, the Court will grant in part and deny in part the United States' *Motion in Limine to Admit Victim's 911 Call and Transcript* (ECF No. 71); will deny in part and reserve ruling in part on Defendant's *Motion to Exclude Out-of-Court and In-Court Identifications, Physical or Clothing Descriptions Affected by Show-Up Identification Procedure, and Post-Arrest Statement* (ECF No. 72); and will deny as moot the United States' *Motion to Exclude Testimony of Defense Expert at Trial* (ECF No. 62).

## United States' *Motion in Limine to Admit Victim's 911 Call and Transcript* (ECF No. 71)

The United States seeks a pretrial ruling that the 911 call—and Jane Doe's and her daughter's statements during this call—qualify as present sense impressions and/or excited utterances. The Government further asks the Court to find that the daughter's statements are nontestimonial so that her statements may be admitted without violating the Confrontation Clause, even if she does not testify. Finally, the United States asks for a pretrial ruling that the entire 911 call is admissible at trial. Defendant objects to the admissibility of the call.

### I.    FACTUAL BACKGROUND

#### A.  Government's Factual Proffer

According to the United States, it intends to present the following evidence at trial. On May 22, 2022, John Doe, a driver for a ridesharing company, took his passenger, Jane Doe, to the Arioso Apartments in Albuquerque. After Jane Doe got out of the vehicle, a man demanded the keys to John Doe's vehicle while brandishing a firearm. When John Doe resisted, the offender violently beat him over the head with a firearm and forcibly removed him from the vehicle. While Jane Doe was walking back to her apartment, she saw what was happening, heard John Doe cry for help, and yelled at the offender to stop. The perpetrator then fired a gunshot in her direction before continuing to beat John Doe and attempting to drive away in the vehicle. Because the key fob was with John Doe, the offender's attempt to take the car was unsuccessful and he then fled on foot. Meanwhile, immediately after the perpetrator shot at Jane Doe, she ran into her apartment and her daughter called 911.

#### B.  The 911 Call

The 911 call lasted just over 10 minutes. In the 911 call, both Jane Doe and her daughter spoke to the 911 operator about the events of the attempted carjacking and what was occurring at

the time. Having listened to the 911 call, the Court finds that Jane Doe was excited and under the stress of the shooting throughout the call and that, during the first portion of the call, her daughter was under the stress and excitement of the event as well. They were each yelling and talking over each other, with the daughter at one point yelling at her mother to stay inside. (*See* Gov.'s Ex. 2.)

However, at 05:33-05:45 in the call, the 911 operator asked the daughter for her name, and she responded, "Don Smith." (Gov.'s Ex. 2 at 05:33-05:45; *see also* Def.'s Ex. G, Tr. 5:12-17; Gov.'s Ex. 2-A, Tr. 9:3-8.)[1] The Court heard evidence at the hearing that the daughter's name is actually Myona Smith. (*See* 8/29/24 Hr'g Tr. 271:2-18.) The United States agrees with defense counsel that the daughter's name is indeed Myona Smith. (*Id.* at 322:15-23.)

## II.    LAW AND ANALYSIS

At trial, the United States intends to walk Jane Doe through the 911 call and ask her to confirm each statement she made to the operator. The Government will only call the daughter at trial if the Court finds her testimony necessary for the call's admission. The United States seeks a pretrial ruling that the 911 call, and Jane Doe's and Myona Smith's statements during the call, are admissible hearsay as present sense impressions and excited utterances. The United States additionally seeks a ruling that Myona Smith's statements are nontestimonial and that she need not testify to admit the 911 call at trial.

### A. Procedure in Analyzing Admissibility of the 911 Call

As an initial matter, the Government asserts the Court does not need to analyze each statement in the 911 call, if the overall call fits an exception, relying on *United States v. Lovato*, 950 F.3d 1337 (10th Cir. 2020). In *Lovato*, a man called 911 to report that he witnessed two men

---

[1] The parties have submitted competing versions of the transcript of the call, which are largely the same but with some notable differences. The United States intends to refile an amended version of its transcript to try to bridge the differences identified in the defense's transcript. (*See* 8/29/24 Hr'g Tr. 323:13-21.) The Court has cited both transcripts but the call itself is the best evidence of what was said.

in a Honda shoot at another car, he followed the Honda, and he dialed 911 within two to three minutes of the gunfire. *Id.* at 1339. The caller discussed the shooting, his continuing observations of the Honda and its occupants, and his safety, often in response to the 911 operator's questions. *Id.* The district court admitted the 911 call under the present sense impression exception, explaining that the continuous conversation was about the same continuing event. *Id.* at 1340. In examining the manner in which the district court admitted the 911 call, the Tenth Circuit explained "that the district court properly analyzed the 911 call as a whole because: (1) no authority requires otherwise in this context, (2) all the statements made within the call pertain to the same temporal event without a substantial change in circumstances, and (3) other relevant factors support the reliability of the statements within the call." *Id.* at 1341-42. The Circuit was also clear, however, that circumstances may require a court to conduct a more particularized analysis. *See id.* at 1342.

Defendant asserts that the Court must consider the admissibility of each statement, and it should not allow in the entirety of the 911 call without that analysis. Defendant argues that the Court in doing so should find that the statements are hearsay because the factors necessary for the hearsay exceptions are not met. Moreover, he argues his Sixth Amendment right will be infringed because the call was testimonial. According to Defendant, the threat was not ongoing, and the callers gave information about past events to help the police locate and arrest the perpetrator.

Unlike in *Lovato*, the 911 call in this case involves more than one witness making statements to the 911 operator, so the admissibility of each speaker's statements requires a separate analysis. Moreover, as will be discussed in the next subsection, there were changed circumstances as regards to Myona Smith approximately halfway through the call. The Court thus finds that a more particularized analysis is needed to determine the admissibility of all the statements in the 911 call. The Court will consider the Confrontation Clause arguments and hearsay objections and

offer initial rulings to the extent it can make determinations on the current record. The United States requested at the hearing an opportunity to submit a document detailing line-by-line its position on the admissibility of each statement. Should the parties wish for a pretrial ruling beyond that contained herein, the parties may file respective motions seeking the admissibility or exclusion of identified portions of the transcripts within 14 days of this Order. Responses thereto should be filed within 14 days thereafter.

### B.  Hearsay Exceptions

Hearsay, a statement the declarant does not make while testifying at trial and is offered to prove the truth of the matter asserted, is generally inadmissible at trial. *See* Fed. R. Evid. 801(c) and 802. Two exceptions to that rule that the Government relies upon for admission here are excited utterances under Rule 803(2) and present sense impressions under Rule 803(1). Defendant argues that neither exception applies because the Government cannot show that the declarant has firsthand knowledge of the subject matter or that the declarant was under the stress of excitement.

### 1.  Personal Knowledge

Defendant contends that the Government cannot show that Myona Smith or the unidentified speakers in the background have firsthand knowledge of the subject matter of their statements. According to the advisory committee notes for Rule 803, the declarant is a witness in a hearsay situation, and Rule 803 does not dispense with the requirement of firsthand knowledge. Fed. R. Evid. 803 advisory committee's note to 1972 proposed rules. Personal knowledge may be evident from the declarant's "statement or be inferable from circumstances." *Id.* (citing Fed. R. Evid. 602). Under Rule 602, a "witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. As the proponent of the evidence, the Government has the burden of establishing personal

knowledge of the declarants by a preponderance of the evidence. *Bemis v. Edwards*, 45 F.3d 1369, 1373 (9th Cir. 1995). When the only evidence of personal perception is the declaration itself, courts should use caution in determining if that evidence is enough to establish the declarant's opportunity to observe, but a clear statement of perception may nevertheless satisfy the preponderance standard. *See Miller v. Keating*, 754 F.2d 507, 511 (3d Cir. 1985). *See also United States v. Brown*, 254 F.3d 454, 461 (3d Cir. 2001) (concluding that excited utterance exception was met where declarants claimed to have personally seen startling event and stated what they observed; distinguishing *Miller* where unidentified declarant assigned blame for accident, but statement did not proclaim startling event and there was no other evidence to infer declarant saw accident).

Defendant refers to the portions of the transcript indicating that the callers are inside the apartment when making the call. (*See*, *e.g.*, Def.'s Ex. G, Tr. 2:7-9, 6:9-12.) At the hearing, the defense presented maps and photographs to try to establish that when the callers were in the apartment, they were not located in a position where they could see what they were describing. (*See* 8/29/24 Hr'g Tr. 280:17-25.) From some of the statements in the call, however, Jane Doe appeared to be outside the apartment. (*See* Def.'s Ex. G at 2:7-8.)

The Government responded that it is unsure whether Jane Doe was on her porch looking outside when she made her statements and will have to develop at trial who had personal knowledge to see what. (*See* 8/29/24 Hr'g Tr. 325:8-16.) The Government in its reply cited a few statements made by Myona Smith that indicate she personally observed what was taking place outside her apartment after the shooting. (*See* Gov.'s Reply 3, ECF No. 90 (citing Gov.'s Ex. 2-A at 2:19 ("The police are turning around.") and *id.* at 4:2-4 ("he done took off the jacket, and now he's wearing a black shirt. He's wearing an all-black shirt with blue jeans on.").) The United States also asserted that the call should not be excluded based on lack of personal knowledge; rather, the

Court should reserve ruling on admissibility until the United States puts on the testimony of the witnesses at trial. (*See* 8/29/24 Hr'g Tr. 325:17-326:1.)

Having considered the contents of the call, the Court currently lacks an adequate foundation to rule one way or another on the issue of personal knowledge as to every statement in the call. For example, there are instances where it appears that Myona Smith is conveying information from others. (*See*, *e.g.*, Def.'s Ex. G, Tr. 1:11-12 ("UF: He robbed an Uber driver. DS: He robbed an Uber driver or something.").) It is thus not self-evident from the call whether the identified statements are what Myona Smith witnessed or was witnessing or if she was relaying information from her mother or other persons. By way of contrast, in another portion of the transcript, Myona Smith said she heard gunshots, (*see* Def.'s Ex. G at 2:2-3), a statement in which she claimed to have personally heard the event and stated what she heard. At this stage, the Government has not established Myona Smith's knowledge as to each and every statement she made. While the Court will not exclude any portions of the call pretrial for lack of personal knowledge, it also will not admit all Myona Smith's statements pretrial without additional foundational evidence or argument establishing first-hand knowledge.

### 2. Excited Utterance Exception

The Court will turn now to whether the record is sufficient to establish that the statements in the call would satisfy the elements necessary to qualify as excited utterances. The excited utterance exception provides that the following statements are not excluded by the hearsay rule, regardless of whether the declarant is available as a witness: "A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). Three elements must be satisfied to admit a hearsay statement under the excited-utterance exception: "(1) a startling event; (2) the statement was made while the declarant

was under the stress of the event's excitement; and (3) a nexus between the content of the statement and the event." *United States v. Smith*, 606 F.3d 1270, 1279 (10th Cir. 2010). In considering whether the declarant was under the stress of the event's excitement, a court may consider "the amount of time between the event and the statement; the nature of the event; the subject matter of the statement; the age and condition of the declarant; the presence or absence of self-interest; and whether the statement was volunteered or in response to questioning." *Id.* (quoting *United States v. Pursley*, 577 F.3d 1204, 1220 (10th Cir. 2009)). "Admissibility hinges on a statement's contemporaneousness with the excitement a startling event causes, not the event itself." *Id.* The exception is based on the theory that an exciting event "temporarily stills the capacity for reflection and produces utterances free of conscious fabrication." *United States v. Magnan*, 863 F.3d 1284, 1292 (10th Cir. 2017) (internal quotation marks omitted).

Defendant admits that the Government can satisfy the first and third elements, but he argues that the Government cannot meet the second element. (8/29/24 Hr'g Tr. 334:3-9.) As an initial matter, he argues that the call itself is insufficient to lay a foundation that the declarants were under the stress of the event's excitement. (*See id.* at 334:10-335:8.) The Court, however, may consider the contents of the 911 call, including tone and volume, when determining whether the declarants are under the stress of a startling event. *See United States v. Alexander*, 331 F.3d 116, 123 (D.C. Cir. 2003) ("If the trial court has access to a recording of the declarant's statement, it may also consider the declarant's 'tone and tenor of voice' in determining whether the declarant made that statement while under the stress of excitement."); *Brown*, 254 F.3d at 460 ("In light of the volume and persuasiveness of authority bearing on the question, we conclude that an excited utterance may itself be sufficient to establish that a startling event occurred and that the question whether

corroborating evidence independent of the declaration is needed in a given case to establish the occurrence of such an event is committed to the discretion of the trial judge.").

Turning then to the statements Jane Doe made in the call, she spoke to the 911 operator shortly after the events – within minutes of the carjacking and shooting.[2] Rule 803(2) "does not require that, in order to be admissible, the statement be contemporaneous with the startling event, but rather only with the excitement caused by the event." *Brown*, 254 F.3d at 460. The nature of witnessing a carjacking and being shot at are clearly scary events that produce the type of excitement for which this hearsay exception applies. The entire call was only ten minutes, and from Jane Doe's tone and expressions, she was excited and under the stress of the event throughout the call. She repeatedly expressed concern about getting help for the driver, who she believed to be injured. Her statements were about the attack against the driver and the perpetrator shooting at her, as well as about trying to get police assistance. There is no indication of self-interest, as Jane Doe said she did not know the driver or the perpetrator. (*See* Def.'s Ex. G at 3:9-12.) While many of her statements were made in response to questions from the 911 operator, that factor alone does not outweigh the numerous other factors indicating that Jane Doe made the statements in the call while under the stress and excitement of the shooting. *Cf. Lovato*, 950 F.3d at 1345-46 ("The mere fact that the caller made statements in response to questions, however, does not demonstrate that the statements were a product of strategic modification outside the bounds of Rule 803(1).") The Court thus finds that Jane Doe's statements contained within the 911 call satisfy the excited utterance exception foundational requirements set forth in Rule 803(2).

---

[2] Besides the contents of the 911 call that indicate the shooting very recently occurred, this Court held a hearing on the motion to suppress in which the Government presented additional facts that corroborate that the crime occurred shortly before Jane Doe and her daughter called 911. (*See, e.g.*, Mem. Op. and Order 1-7, ECF No. 100.) Should the Government's evidence at trial not establish that the call occurred within minutes of the startling event, Defendant may re-raise foundational objections at trial.

Regarding Myona Smith's statements, Defendant argues that she was not with Jane Doe during the attack, did not perceive the event, and, by the time she was on the phone, the exigency had passed. Defendant asserts she was "safe in the snug of the apartment" when she made the call. (Def.'s Resp. 3, ECF No. 85.) Defendant also focuses on the fact that Ms. Smith gave the operator a false name, suggesting a capacity for reflection that takes her statements outside the hearsay exception.

Although there is no evidence Myona Smith saw the crime as it occurred, she said in the call that she heard the shots fired. She then witnessed the distress her mother was in from the shooting. Her tone in the beginning of the 911 call shows that she, too, was stressed by the event and called to get police assistance for the driver and her mom. That Myona Smith was under the stress of the event and continued to be concerned for her, her mother's, and the driver's safety, despite her being in the apartment, is revealed in multiple statements to the 911 operator. (*See*, *e.g.*, Def.'s Ex. G at 1:17-19 ("Yes, he's shot. He's in the car…. Tell the police to come up here."); *id.* at 2:5-8 ("He shot and I think didn't he shoot the Uber driver? … That's him, mom, come on, get the fuck inside. Get the fuck inside, come on babe, please. Come on baby. Get in. Fuck them clothes."); *id.* at 3:2 ("Get away from the door.").) The 911 call reveals that the event was startling for both mother and daughter, and that Myona Smith, while under the stress of the excitement, called 911 and made statements to the operator about the event to get police assistance.

However, when the 911 operator asked for her name midway through the call, Myona Smith gave a fake one. At that point, she had a shift that reveals she had the capacity for reflection and made a statement that was not free of conscious fabrication. Thus, the record indicates that her mind was no longer preoccupied with the stress of the exciting event at that point in the call. The

Court thus concludes that Myona Smith's statements from the time she gave the false statement and afterwards should not be admitted under the excited utterance exception.

Additionally, there are statements in the 911 call from a second unidentified female and an unidentified male. Defendant asks the Court to exclude all remarks made by the unidentified speakers. (*See* Def.'s Resp. 11, ECF No. 85.) The record does not reveal whether these persons were under the stress of a startling event, and thus, the Government has not shown that the excited utterance hearsay exception applies to their statements. The Government, however, asserts that it would be offering the unidentified female's and male's statements, not for the truth of the matter asserted, but rather for the effect on the 911 operator or to provide context for the call. (Gov.'s Reply 5, ECF No. 90.) The Court agrees that some of the statements may be admitted if they are not admitted for their truth, but to provide context for admissible statements that follow. (*See*, *e.g.*, Def.'s Ex. G at 2:2-4 ("UM: When'd he shoot. Cause I didn't hear no gunshots. DS: I did. He shot. UF: He shot at me."); *id.* at 6:13-17 ("UF1: … he was wearing a ski mask. UF: He wasn't wearing, no he wasn't. UF1: He pulled a gun out of his… UF: No he wasn't."); *id.* at 7:7 ("UM: I know but why would he take off cause I'm pretty sure he's been shot. UF: I don't know if he got shot or not. I didn't see no blood so he couldn't have got shot.").) The Court will thus not exclude all the statements of the unidentified speakers, as requested by Defendant.

### 3. Present Sense Impression Exception

The Government also seeks admission of statements in the call under the present sense impression exception to the hearsay rule. Defendant argues that the statements do not fit within this exception because some statements reported past events and did not describe or explain an event while or immediately after the caller saw the event. He also contends the statements are unreliable. The Court need not determine at this time whether Jane Doe's statements are admissible

under the present sense impression exception to the hearsay rule because it has already determined her statements qualify as excited utterances. Similarly, this Court determined that Myona Smith's statements prior to giving a fake name are admissible under the excited utterance exception. The Court will thus focus herein on Myona Smith's statements after giving a fake name to determine if they are admissible under the present sense impression exception.

Under Federal Rule of Evidence 803(1), "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it" is admissible as an exception to the rule against hearsay, regardless of whether the declarant is available as a witness. Fed. R. Evid. 803(1). The basis for this exception is that the contemporaneity of the event and statement minimizes unreliability due to intentional deception or failure of memory. *Lovato*, 950 F.3d at 1344. *Lovato* is instructive where the Tenth Circuit admitted a similar 911 call that contained statements describing what occurred minutes earlier along with contemporaneous events. *See id.* at 1344-45. The Tenth Circuit explained that the "short delay does not give rise to much opportunity for reflection or interpretation that could undermine the reliability of the statements." *Id.* at 1345. That Myona Smith gave a false name midway through the call is a changed circumstance that indicates she had an opportunity for reflection that undermines the reliability of her statements thereafter. Consequently, the Government has not established that the present sense impression exception applies to Myona Smith's false statement and her statements thereafter.

### C.  Sixth Amendment

The Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. Because of this right, "[t]estimonial statements of witnesses absent from trial [are admissible] only where the declarant is unavailable, and only

where the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington*, 541 U.S. 36, 59 (2004). Non-testimonial statements, by contrast, do not implicate the Confrontation Clause. *See Davis v. Washington*, 547 U.S. 813, 817, 823-29 (2006). "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id.* at 822. In contrast, a testimonial statement is a more formal statement, the primary purpose of which, when objectively considered, is to establish or prove past events that may be relevant to a future criminal prosecution. *United States v. Morgan*, 748 F.3d 1024, 1038 (10th Cir. 2014).

The subjective or actual purpose of the individuals involved is not the relevant inquiry; the inquiry is objective. *United States v. Draine*, 26 F.4th 1178, 1195 (10th Cir. 2022) (quoting *Michigan v. Bryant*, 562 U.S. 344, 360 (2011)). What is relevant is the purpose that reasonable participants would have had, as determined from the statements, actions, and circumstances in which the encounter occurred. *Id.* at 1195 (quoting *Bryant*, 562 U.S. at 360). "Implicit in *Davis* is the idea that because the prospect of fabrication in statements given for the primary purpose of resolving that emergency is presumably significantly diminished, the Confrontation Clause does not require such statements to be subject to the crucible of cross-examination." *Bryant*, 562 U.S. at 361.

In *Davis v. Washington*, Michelle McCottry called 911 after her former boyfriend had just assaulted her and fled. *See Davis*, 547 U.S. at 817-18. The Supreme Court held that her statements in the 911 call were non-testimonial and thus did not implicate the Confrontation Clause. *See id.* at 822, 827-28. The Court offered four reasons why: (1) the caller described events as they unfolded; (2) the caller faced an ongoing emergency and called for help against a bona fide

physical threat; (3) the statements were imperative to resolve a present emergency rather than simply descriptive of past events; and (4) the caller's answers were frantic and made over the phone in a stressful and dangerous environment. *See id.* at 827-28.

The *Davis* Court then discussed the companion case, *Hammon v. Indiana*. *See Davis*, 547 U.S. at 819. Police responded to a domestic disturbance at the home of Hershel and Amy Hammon. *See id.* Amy said that nothing was the matter and permitted the officers to enter. *Id.* One of the officers spoke with Hershel in the kitchen; the other talked with Amy in the living room. *See id.* Hershel tried to participate in Amy's conversation with the police, but the officers prohibited him from doing so. *Id.* at 819-20. Eventually, Amy wrote and signed a battery affidavit, which detailed how Hershel attacked Amy and her daughter. *Id.* at 820. The Supreme Court held that Amy's statements were testimonial and implicated the Confrontation Clause. *See id.* at 829-32. The Court returned to the same reasons it considered in *Davis*, but in *Hammon*, they cut the opposite way: Amy's narrative was of past events, with some remove in time from the danger, and while she was protected by police. *See id.*

Defendant contends that, objectively viewed, there was no ongoing emergency by the time the women called 911. This Court disagrees and finds that, for the majority of the 911 call in this case, the call fits in the *Davis* mold. Jane Doe and her daughter described unfolding events in a stressful, ongoing, emergency, situation. They called 911 shortly after the carjacking and near the scene of the crime. The call was one for help in the face of a bona fide threat, and the women felt unsafe. The perpetrator fired shots toward Jane Doe. The shooter was still at-large. An active shooter at large poses a threat to the public. *Cf. Bryant*, 562 U.S. at 363-64 (stating that assessing whether emergency that threatens police and public is ongoing cannot narrowly focus on whether threat solely to one victim has been neutralized because threat may continue, and context may

depend on type of weapon and medical condition of victims). The women were also unsure if the driver had been shot and the extent of his injuries, and they were seeking help on his behalf too. Many of their statements were about events as they were happening. Both women gave statements during an ongoing emergency, in a stressful and potentially dangerous environment in an effort to resolve the present emergency. Accordingly, Myona Smith's statements that are admissible under the excited utterance exception are nontestimonial statements that need not be excluded under the Confrontation Clause because they were made under circumstances objectively indicating that the primary purpose was to enable police assistance to meet an ongoing emergency.

Nevertheless, non-testimonial statements can evolve into testimonial ones. *See Davis*, 547 U.S. at 828-29. Statements may become testimonial "when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* at 822. As for the statements Myona Smith made upon and after giving the 911 operator a fake name, this Court has determined that the Government has not established on the current record that they are admissible under either the excited utterance or present sense impression exceptions. Consequently, at this stage, the Government has not established grounds to admit them, and the Court need not rule on whether her statements became testimonial at the time she gave a false identity. *See United States v. Pursley*, 577 F.3d 1204, 1224 (10th Cir. 2009) (explaining that courts should not pass on questions of constitutionality unless such a decision is unavoidable).

As for Jane Doe's statements, she is expected to testify, so the admission of her statements will not implicate the Confrontation Clause. *See Crawford*, 541 U.S. at 59 n.9 ("The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain

it."). The Court thus does not need to determine whether Jane Doe's statements became testimonial when police arrived, and she was speaking to them in person. (*See, e.g.*, Def.'s Ex. G at 8:19-21.)

### D.  Relevance

Defendant argues in his brief that the call is not relevant. According to Defendant, the statements do not make it more probable that Mr. Garcia is the person who assaulted the driver, because Myona Smith did not see the attack and her mother will not identify him as the attacker.

Evidence is relevant if it has a "tendency to make a fact more or less probable than it would be without the evidence" and "is of consequence in determining the action." Fed. R. Evid. 401. Jane Doe was an eyewitness to the shooting and her statements concerning the shooting and what she observed during and immediately after are relevant to the elements of the crimes, including the perpetrator's identity. Myona Smith stated in the call that she heard the shooting, which is corroborating testimony. As a general matter, their statements about what happened and what was occurring are relevant to show why and what the police did in response to the 911 call. *Cf. United States v. Freeman*, 816 F.2d 558, 563-64 (10th Cir. 1987) (explaining that informant's statements were relevant to explain preparations and steps in government's investigation and why agents had suspects under surveillance). The Court will not exclude the 911 call as a whole for lack of relevance. Defendant may, however, raise relevance objections to specific statements in additional briefing or at trial.

### Defendant's *Motion to Exclude Out-of-Court and In-Court Identifications, Physical or Clothing Descriptions Affected by Show-Up Identification Procedure, and Post-Arrest Statement* (ECF No. 72)

Defendant in this motion seeks exclusion of five categories of evidence. The Court will address each category in the same order that he raised them.

**1.  Any in-court identification of Mr. Garcia by any witness as the offender.**

Defendant seeks the exclusion of Jane Doe's identification and of any other witness identifying Defendant "as the offender." (Def.'s Reply 1, ECF No. 91.) The request as to Jane Doe's in-court identification is moot because the Government has repeatedly and affirmatively stated it will not introduce such evidence. The Government, however, does intend to elicit in-court identifications from law enforcement witnesses as to the person they followed, observed, and/or arrested the day of the charged conduct. Defendant does not object to that evidence, but he does object to a witness saying he or she could identify "the offender" or "the individual." (*See* Def.'s Mot. 1, ECF No. 72; 8/29/24 Hr'g Tr. 342:23-343:1.) The Court denies this request as overly broad, too general, and unripe, particularly an exclusion for "the individual." Whether an identification question may mislead the jury will depend on the question itself and the context and foundation preceding it. The Court cautions the prosecution to take care in the terminology used in the questions eliciting in-court identifications by law enforcement witnesses to avoid confusion as to the limits of what each witness observed. The Court, however, will not exclude any particular identification question pretrial but will take up any objections at trial.

Defendant also asks to exclude in-court identifications of Mr. Garcia as the "offender" from both D.S. and C.E. because they were told at the scene by police that the police believed they had arrested the person who did it. (*See* Def.'s Reply 1-4, ECF No. 91; Def.'s Supp. 1-2, ECF No. 110.) According to Defendant, D.S. and C.E. could not describe features of the offender's face at the time, so their memories for identification purposes could be tainted.

At the hearing, the Government explained that C.E. was somebody at the apartment that showed up to help John Doe after he was pulled out of the vehicle. (8/29/24 Hr'g Tr. 344:18-21.) The Government said that it would not ask C.E. for an in-court identification. (*See id.* at 344:21-24.) After the hearing, the Government filed a *Notice Regarding In-Court Identification* (ECF No.

117), in which the United States asserted "that it will ask John Doe to provide a description of the offender who victimized him, but it will not ask John Doe to identify Defendant as the offender in Court." Because the Government will not ask John Doe or C.E. to provide an in-court identification of Mr. Garcia as the offender, Defendant's request for an order prohibiting the United States from introducing such testimony will be denied as moot.

**2.    Any out-of-court identification of Mr. Garcia by any witness as the offender.**

Next, Defendant seeks exclusion of any out-of-court identification of Mr. Garcia as the offender. The only out-of-court identification of Mr. Garcia is Jane Doe's show-up identification. (*See* Gov.'s Resp. 3, ECF No. 79.) The Government states that it will not seek to admit testimony on the out-of-court identification and asks the Court to deny the request as moot. Based on the record, the Court agrees that the request is moot and will deny it on those grounds. *Cf. United States v. Mikolon*, 719 F.3d 1184, 1188-89 (10th Cir. 2013) (noting that where government twice indicated it would not seek to admit challenged statements, government took statements off table, so district court could have ignored issue all together, and citing with approval case denying as moot motion to suppress when government said it would not use statement).

**3.    Any physical or clothing description by witness N.S. of the offender that includes any details not contained in N.S.'s descriptions to 911 dispatch or to the police prior to the show-up identification procedure employed in this case.**

Defendant seeks exclusion of testimony from Jane Doe that the offender was wearing a white t-shirt, a black mask, white shoes, and blue jeans. According to Defendant, Jane Doe's statements in the 911 call are inconsistent with these descriptors. The Government agrees not to elicit testimony from Jane Doe about a white t-shirt, black mask, and white shoes, so the Court will deny the motion as moot as to those descriptions.

The Government, however, objects to not permitting Jane Doe to testify that she said the offender was wearing blue jeans, because she made that statement during the 911 call. Indeed, Jane

Doe said in the call, "Tell them he has on a black hoodie and he has on blue jeans." (Gov.'s Ex. 2 at 0:36-0:040.) Her daughter then stated, "He has on black jeans…" (*Id.* at 0:38-0:41.) Later, Jane Doe relayed that he was wearing "dingy black pants." (*Id.* at 5:01-5:04.) Because Jane Doe initially described the offender as wearing blue jeans in the 911 call, the Court will not exclude that description. The issue of whether the suspect was in blue jeans or black pants is a topic for cross-examination, not exclusion.

      **4.    Any information about a show-up identification having been conducted in response to a question by the defense to any witness about whether a 6-pack photographic lineup/array was conducted in this case.**

Defendant seeks to cross-examine officers about standard operating procedures for six-pack photo spreads for identification purposes, which were not done in this case, without opening the door to a response about the show-up identification the officers did do. The Government opposes this request as premature, arguing that it depends on exactly how defense counsel phrases the question and how the witness responds. The Court will reserve ruling on this issue until trial, because whether to allow a witness to testify as to the show-up identification will depend on defense counsel's questioning and whether the question opens the door to the officers explaining what they did do. *Cf. United States v. Lopez-Medina*, 596 F.3d 716, 730 (10th Cir. 2010) (explaining that when defense counsel purposefully and explicitly opens the door on a particular and otherwise inadmissible line of questioning, such conduct operates as a limited waiver allowing the government to introduce further evidence on that same topic).

      **5.    Any information about whether Mr. Garcia provided a post-arrest statement and the contents of such post-arrest statement.**

Defendant seeks to exclude information about any post-arrest statement made by Mr. Garcia. The Government asserted that it will not elicit testimony about any statements made to law

enforcement after Defendant was detained or arrested. The Court will thus deny this request as moot.

## United States' *Motion to Exclude Testimony of Defense Expert at Trial* (ECF No. 62)

On February 9, 2024, Defendant filed a *Notice of Expert Testimony by Roy S. Malpass, Ph.D* (ECF No. 44), and the United States thereafter moved to exclude his proposed expert testimony (ECF No. 62). The United States asserts that, because it will not present evidence at trial as to Jane Doe's positive identification of Defendant after he was detained by police, the expert testimony is not helpful to understand the evidence or to determine a fact in issue under Rule 702(a).

According to Defendant's Notice, Dr. Malpass is a Professor Emeritus of Psychology at University of Texas at El Paso where he founded the Eyewitness Identification Research Laboratory. Defendant seeks his opinion testimony on the problems in Jane Doe's eyewitness identification caused by her level of attention to the offender, distance, description, and cross-ethnicity identification. He also seeks testimony from Dr. Malpass about the flaws in show-up identifications and the flaws in the procedures employed in this case, including the improper suggestiveness, the clear implication she was to make an identification, the conversation between the officer and her, and the absence of a formal question of her confidence. Finally, Defendant gave notice that Dr. Malpass may testify that the likelihood of Jane Doe producing a reliable identification is too low to justify an identification procedure and that the identification here was too flawed to imply guilt.

The Government has repeatedly stated it will not introduce Jane Doe's eyewitness identification in its case-in-chief at trial, and instead will walk her through her statements in the 911 call. (*See* 2/27/24 Hr'g Tr. 117:2-120:2, ECF No. 109.) Defense counsel stated at the hearing

on this motion that the defense would not need Dr. Malpass's testimony so long as the Government does not present testimony from a victim or other eyewitness about an in-court or out-of-court identification of Mr. Garcia as the perpetrator of the crime. (*See* 8/29/24 Hr'g Tr. 345:22-346:18.) Given the United States' assertions that it will not introduce such identification evidence, it appears that Defendant will not call Dr. Malpass as an expert. The Court will thus deny as moot the United States' motion to exclude Dr. Malpass's testimony. If, however, the Court's understanding is not accurate and Defendant may still call Dr. Malpass as an expert witness at trial, Defendant must file within seven days of entry of this Memorandum Opinion and Order a notice stating that he intends to call Dr. Malpass as an expert witness so that the Court can resolve any issues that are not moot before trial.

**IT IS THEREFORE ORDERED** that:

1. The United States' *Motion in Limine to Admit Victim's 911 Call and Transcript* (**ECF No. 71**) will be **GRANTED IN PART AND DENIED IN PART** as follows:

    a. The Court **DENIES** the United States' request to admit the full contents of the 911 call pretrial on the current record. The Court instead will reserve ruling on the admissibility of all portions of the call until further development of the record.

    b. The Court **GRANTS** the United States' request to issue a pretrial ruling that Jane Doe's statements during the call qualify as excited utterances under Rule 803(2). The Court **DENIES** the United States' request to issue a pretrial ruling that Jane Doe's statements during the call qualify as present sense impressions under Rule 803(1) as unnecessary, given the Court's excited utterance ruling.

    c.   The Court **GRANTS IN PART** the United States' request to issue a pretrial ruling that Myona Smith's statements during the call qualify as excited utterances under Rule 803(2) and/or present sense impressions under Rule 803(1). The Court concludes that Myona Smith's statements during the 911 call up until the time she offered a false name during the call qualify as excited utterances under Rule 803(2), but that her false statement concerning her identity and her statements thereafter do not qualify as excited utterances or present sense impressions.

    d.   The Court **GRANTS IN PART** the United States' request for a pretrial ruling that Myona Smith's statements in the 911 call are nontestimonial. The Court concludes that Myona Smith's statements that fall within the excited utterance exception are nontestimonial. The Court, however, does not issue a pretrial ruling on whether the statements made by Myona Smith that do not meet the excited utterance or present sense impression exceptions are nontestimonial.

    e.   Should the parties wish for a pretrial ruling beyond that contained herein, the parties may file respective motions seeking the admissibility or exclusion of identified portions of the 911 call **within 14 days** of this Order. Responses thereto should be filed **within 14 days thereafter**.

2.  The Court will **DENY IN PART** and will **RESERVE RULING IN PART ON** Defendant's *Motion to Exclude Out-of-Court and In-Court Identifications, Physical or Clothing Descriptions Affected by Show-Up Identification Procedure, and Post-Arrest Statement* (**ECF No. 72**) as follows:

    a. The Court will **RESERVE RULING** until trial on Defendant's request to exclude information about a show-up identification having been conducted in response to a question by the defense to any witness about whether a six-pack photographic lineup/array was conducted in this case.

    b. The Court will otherwise **DENY** the motion.

3. The United States' *Motion to Exclude Testimony of Defense Expert at Trial* (**ECF No. 62**) is **DENIED AS MOOT**.

4. If Defendant may still call Dr. Malpass as an expert witness at trial, Defendant must file **within seven days** of entry of this Memorandum Opinion and Order a notice so stating his intent to do so and explaining why the United States's motion to exclude Dr. Malpass's testimony is not moot.


**SENIOR UNITED STATES DISTRICT JUDGE**