IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                        No. 22-CR-1171-JCH

ADRIAN GARCIA,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is the United States' *Motion to Exclude Testimony of Nicholas Scurich* (ECF No. 130). After full briefing, this Court held an evidentiary hearing on the motion on November 12, 2024, and heard testimony from Nicholas Scurich, Ph.D. The hearing transcript was filed on December 2, 2024. Having reviewed the motion, briefs, evidence, transcript, and applicable law, the Court will deny the United States' motion to exclude Dr. Scurich's expert testimony.

    **I.**        **FACTUAL BACKGROUND**

Defendant Adrian Garcia is charged in a three-count indictment: (Count 1) Carjacking in violation of 18 U.S.C. § 2119(1); (Count 2) Using and Carrying a Firearm During and in Relation to a Crime of Violence, and Possessing a Firearm in Furtherance of such Crime, and Discharging said Firearm in violation of 18 U.S.C. § 924(c)(1)(A)(iii); and (Count 3) being a Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924. (*See* Indictment, ECF No. 4.) The charges arise from an alleged carjacking that occurred on May 22, 2022. (*Id.*) According to the Government, it will present evidence at trial that the offender

possessed a firearm; he discharged the firearm in furtherance of the carjacking; and as he fled the scene, he discarded the firearm, which police recovered. (*See* Gov.'s Resp. 2, ECF No. 80.)

The Government intends to call as an expert witness at trial Firearms and Toolmark Examiner Erich Smith. (Notice 1, ECF No. 48.) Mr. Smith examined a spent cartridge case (recovered from the scene of the carjacking) and a 9mm pistol (that a law enforcement officer recovered a short distance away) and concluded that the spent cartridge case was fired from the recovered 9mm pistol. (*Id.* at 2.) He used the E3CV methodology (evaluation, classification, comparison, conclusion, and verification), a method memorialized on the Association of Firearm and Toolmark Examiners ("AFTE") website. (*See* Mem. Op. and Order 6, ECF No. 125.) For the comparison step, he used the AFTE theory to decide whether there was sufficient agreement. (*Id.* at 6-7.) After a challenge under Rule 702 and *Daubert*, this Court permitted Mr. Smith to testify as an expert in the field of firearm and toolmark analysis and to give the opinion set forth in his report, including the grounds and reasoning in support, subject to the limitations set forth in the *United States Department of Justice Uniform Language for Testimony and Reports for the Forensic Firearms/Toolmarks Discipline Pattern Examination*. (Mem. Op. and Order 1-2, ECF No. 125.)

Following that ruling, Defendant filed a *Notice of Expert Testimony* setting forth his intent to introduce at trial expert testimony from Nicholas Scurich, Ph.D., as "an expert in research design, the evaluation of research design, data analysis including statistical analysis, and the evaluation of data analysis." (Notice 1, 3, ECF No. 128.) According to Defendant, Dr. Scurich has "specialized expertise in the analysis of validation studies for forensic firearm/toolmark examination by human examiners." (*Id.* at 3.) The defense intends to use Dr. Scurich's testimony to impeach or rebut Erich Smith's testimony. (*Id.*)

More specifically, Defendant stated in the Notice that Dr. Scurich will testify regarding low repeatability and reproducibility of conclusions by firearm/toolmark examiners in validation studies. (*See* Notice 3, ECF No. 128.) Second, according to the Notice, Dr. Scurich will impeach or rebut Mr. Smith's opinion by explaining what the potential error rate ranges are in validation studies when inconclusive responses are appropriately analyzed. (*See id.* at 3-4.) Third, Dr. Scurich may impeach or rebut Mr. Smith's characterization of the literature and studies and the applicability of the studies to casework. (*Id.* at 4.) Fourth, to the extent Mr. Smith relies on validation studies in his testimony, Dr. Scurich may testify to fundamental design flaws in the studies regarding the sampling of examiners and materials, problem difficulty and bias, missing data, and inconclusive responses. (*Id.*) Finally, Dr. Scurich will rebut Mr. Smith's testimony by testifying about reasons for growing skepticism by scientists in the field. (*Id.*)

## II.    ANALYSIS

The Government moves to exclude Dr. Scurich's testimony for multiple reasons. The Government argues that the Notice is too broad and did not comply with Federal Rule of Criminal Procedure 16. It also contends that Dr. Scurich's testimony should be excluded under Federal Rule of Evidence 702 because Defendant has not established that Dr. Scurich is qualified or that his opinions are reliable, relevant, or helpful to the jury. According to the United States, allowing his testimony would undermine the Court's gatekeeping function under *Daubert* and confuse the jury. For the reasons explained herein, the Court disagrees with the Government.

### A. Rule 16 does not justify exclusion of Dr. Scurich's testimony.

The United States argues that Defendant's Notice does not contain "a complete statement of all opinions" that Dr. Scurich will offer, but instead too broadly lists topics, rather than substantive opinions. (Gov.'s Mot. 5, ECF No. 130.) It asserts his proposed testimony should be

struck on this ground alone. In response, Defendant contends that its expert notice for Dr. Scurich reflects good-faith efforts to anticipate and track the likely areas where rebuttal or impeachment testimony may be necessary and provides details about the areas of Mr. Smith's potential testimony that Dr. Scurich would rebut and impeach at trial. (Def.'s Resp. 2-3, ECF No. 131.) Further, the defense points out that government has already been provided with "substantial information on the record to date reflecting Dr. Scurich's opinions, including briefing, articles, and testimony such that the government has had ample notice of Dr. Scurich's positions and an opportunity to prepare for cross examination." (*Id.* at 4.)

Rule 16(b)(1)(C)(iii) provides that the expert disclosures must contain: "a complete statement of all opinions," the bases and reasons for those opinions, "the witness's qualifications, including a list of all publications authored in the previous 10 years," and a list of all other cases in which the witness has testified as an expert at trial or by deposition in the previous four years. Fed. R. Crim. P. 16(b)(1)(C)(iii). Parties have a continuing duty to disclose newly discovered evidence promptly. Fed. R. Crim. P. 16(c). If a party fails to comply with Rule 16, a court may prohibit the party from using the undisclosed evidence at trial. Fed. R. Crim. P. 16(d)(2)(C). A trial continuance, however, is a preferred remedy. *See United States v. Martinez*, 455 F.3d 1127, 1131 (10th Cir. 2006).

While Defendant's Rule 16 summaries are relatively cursory, the record contains substantial discussion of Dr. Scurich's opinions based on his published articles. (*See, e.g.*, Def.'s Reply, ECF No. 88-1, 88-2, 88-3, and 88-7; 8/28/2024 Hr'g Tr. 68:6-25, 69:19-70:15, 91:8-21, 92:23-93:3, 94:1-6, 122:18-21; 8/29/2024 Hr'g Tr. 249:23-250:3, 255:14-20.) Defendant also provided a list of the 25 studies that Dr. Scurich is familiar with that informs the Government about which validation studies he may testify. (*See* Notice 5-8, ECF No. 128.) Moreover, any prejudice

4

from the lack of more specificity in the Notice was cured at the hearing. The purposes of Rule 16 include minimizing surprise from unexpected expert testimony and allowing a party to prepare for cross-examination and presentation of opposing experts. *See* Fed. R. Crim. P. 16 advisory committee's note to 1993 amendment. Here, Rule 16's purposes are met via the disclosures in the record and the opportunity the United States had to cross-examine Dr. Scurich at the *Daubert* hearing. The United States asked Dr. Scurich specific questions as to each of the five enumerated opinions listed in the Notice and gained additional detail as to each. (*See* 11/12/24 Hr'g Tr. 54:12-75:1, 84:1-117:3.) Exclusion is not the preferred remedy, nor is it appropriate here. Accordingly, the Court will deny the United States' motion to exclude Dr. Scurich's expert testimony under Rule 16.

> **B. Defendant satisfied his burden under Rule 702 and *Daubert* to establish Dr. Scurich's qualifications and the relevance and reliability of his opinions.**

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Fed. R. Evid. 702. A witness, qualified by knowledge, skill, experience, training, or education, may offer an opinion "if the proponent demonstrates to the court that it is more likely than not that" the following conditions are met:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

*Id.* Rule 702 incorporates the principles of *Daubert*, 509 U.S. 579, and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), to ensure that proffered expert testimony, even non-scientific and experience-based expert testimony, is both relevant and reliable. Fed. R. Evid. 702, 2000

Amendments. The focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

To determine whether an expert opinion is admissible, the court performs the following two-step analysis: (1) the court must determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion, and (2) if the expert is so qualified, the court must determine whether the expert's opinion is reliable under the principles set forth in *Daubert*. *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). Some non-exhaustive factors helpful to determine reliability are: "(1) whether the particular theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has achieved general acceptance in the relevant scientific or expert community." *United States v. Baines*, 573 F.3d 979, 985 (10th Cir. 2009) (citing *Daubert*, 509 U.S. at 593-94). *Daubert*'s general holding setting forth the judge's gate-keeping obligation applies not only to testimony based on scientific knowledge, but also to testimony based on technical or specialized knowledge. *Kumho Tire*, 526 U.S. at 141. *Daubert* thus covers expert testimony that is not purely scientific. *United States v. Medina-Copete*, 757 F.3d 1092, 1101 (10th Cir. 2014).

The proponent of the expert bears the burden by a preponderance of the evidence to establish that the requirements for admissibility have been met. *See United States v. Nacchio*, 555 F.3d 1234, 1241, 1251 (10th Cir. 2009). Rule 702 is a liberal standard, and courts have a strong preference for admitting evidence having some potential for assisting the jury. *United States v. Gomez*, 67 F.3d 1515, 1526 (10th Cir. 1995); *United States v. Johnson*, 732 F. App'x 638, 656 (10th Cir. Apr. 19, 2018).

1. **Dr. Scurich is qualified as an expert in research design, the evaluation of research design, data analysis including statistical analysis, and the evaluation of data analysis.**

A trial court has broad discretion to determine whether a witness is qualified as an expert. *United States v. Vargas*, 471 F.3d 255, 262 (1st Cir. 2006). A witness is qualified by knowledge, skill, experience, training, or education when the witness has achieved a meaningful threshold of expertise in the subject area. *Levin v. Dalva Brothers, Inc.*, 459 F.3d 68, 78 (1st Cir. 2006). Nevertheless, a witness may be qualified in one area, but not in others, so a court may properly limit the areas of testimony to those in which the witness has sufficient expertise. *See id.*

According to the Government, Dr. Scurich is not qualified in the field of firearm and toolmark identification evidence to render an opinion about the evidence in this case. Dr. Scurich, however, is not offering an opinion about the firearm and toolmark analysis Mr. Smith conducted in this case. Instead, his testimony will be more generally about the research on the reliability of the field of firearm and toolmark identification.

Dr. Scurich is a quantitative psychologist with a PhD in Psychology from the University of Southern California. (11/12/24 Hr'g Tr. 15:25-16:6.) His training included courses on advanced research methods and advanced statistical methodology. (*Id.* at 16:9-12.) He currently works as a professor at the University of California at Irvine, where he is the chairman of the psychology department. (*Id.* at 16:15-19.) Dr. Scurich teaches graduate courses in advanced research methods and forensic assessment. (*See id.* at 17:2-7.) He has authored more than 75 peer-reviewed journal articles, book chapters, law review articles, technical reports, and conference proceedings. (*See id.* at 18:11-15.) He has published articles in, among others, the *Journal of Forensic Sciences* and *Forensic Science International: Synergy*. (*Id.* at 18:16-20.) Additionally, he has served as a peer reviewer for over 30 scientific journals, including forensic science journals. (*See id.* at 21:6-16.)

He also serves as a statistical consultant for the editorial board for *Law and Human Behavior*. (*Id.* at 21:17-22:1.)

Although he does not have experience and training in firearms and toolmark casework, he has extensive experience and training in research methods and design. He has also acquired familiarity with the research studies and underlying data that the firearm and toolmark examiners rely on to support their assertion that the AFTE theory of identification is a reliable method for comparing cartridge cases and bullets. (*See* 11/12/24 Hr'g Tr. 27:21-28:8.) Using his knowledge, training, and skills as a research scientist and data analyst, he has published peer-reviewed articles analyzing validation studies examining the reliability of firearms and toolmark analysis by examiners. (*See id.* at 27:20-29:11.) His opinions will be based on his education, training, research, and ongoing review of the relevant literature. The Court finds that Dr. Scurich has sufficient education, training, experience, and knowledge to qualify as an expert in research design, the evaluation of research design, data analysis including statistical analysis, and the evaluation of data analysis to offer the opinions set forth in the Notice (ECF No. 128).

### 2. Dr. Scurich's opinions are reliable based on his education, training, experience, and research.

As noted above, Dr. Scurich's opinions are based on his education and knowledge of statistical analysis and data interpretation, his training and experience on experimental design and research methodologies, and his review of academic articles. He has extensively reviewed the literature and research studies testing the firearms and toolmark field and analyzed the raw data therein. He applied reasoning to reach his conclusions based on his specialized knowledge in research design and statistical analysis, his education, and his training. His own criticisms have been published in scientific journals and are the subject of peer review. (*See, e.g.*, Gov.'s Hr'g Ex. 1, 2, 4, 5, and 6.) Defendant has met his burden of establishing that Dr. Scurich's opinions, as set

8

forth in the Notice and at the hearing, are based on scientific, technical, and specialized knowledge and are reliable under Rule 702 and *Daubert*.

### 3. Dr. Scurich's opinions are relevant and helpful to the jury.

The United States next argues that, because the issues at trial are not about research designs or the best way to analyze statistical data, the evidence is not relevant and will confuse the jury. According to the Government, Mr. Smith will not testify at trial about the error rates in the field, about specific validation studies, or about validation study designs, as those were relevant to the issues in the *Daubert* hearing, not trial. Because Mr. Smith will not discuss the low error rate in the field, the Government asserts that Dr. Scurich's testimony would not impeach or rebut Mr. Smith's testimony.

In his response, Defendant argues that it is highly relevant how often the method Mr. Smith used to reach his result is right. Mr. Garcia asserts he is entitled to both cross-examine Mr. Smith about the method he used and the reliability of that method, as well as present critiques of the method and its reliability, especially critiques from someone qualified to evaluate research design.

The Government relies on *United States v. Paul*, in which the Eleventh Circuit upheld the district court's rulings that a government witness was qualified to testify as a handwriting expert but that the rebuttal testimony of defendant's proposed expert would not be admitted. 175 F.3d 906, 908-09 (11th Cir. 1999). The defendant sought to admit testimony from a law professor who reviewed the literature in the field and coauthored a law review article critical of forensic document examiners' ability to reach the correct conclusion in questioned document examinations. *Id.* at 912. The circuit noted that his training did not make him more qualified to testify as an expert on handwriting analysis than a lay person who read the same articles, because he was not a questioned documents examiner, received no formal training in the field, had not attended seminars on

handwriting analysis, had never worked in a lab, and was not a member of any professional organizations in the field. *Id.* The Eleventh Circuit affirmed the exclusion of his testimony under Rule 702 because his background did not qualify him as an expert on the limitations of handwriting analysis. *Id.*

The Third Circuit, however, came to a different conclusion than that in *Paul*, determining that the district court erred in not allowing the same law professor to testify as an expert on the limitations of the government's handwriting testimony. *United States v. Velasquez*, 64 F.3d 844, 845 (3d Cir. 1995). The Third Circuit explained: "even though the district court had recognized handwriting analysis as a field of expertise, the court erred as a matter of law in denying the defense the opportunity to criticize the standards employed in that field of expertise." *Id.* at 848. The *Velasquez* court noted that the criticism of the field went to the weight the government's handwriting expert's testimony should receive. *Id.* The Third Circuit determined that his testimony met all three requirements of Rule 702: (1) the professor's eight years of self-directed research on handwriting analysis and co-authorship of a law review article on the subject gave him sufficient specialized knowledge of the limitations of handwriting analysis to be considered an expert in that subject; (2) his criticisms of the lack of standards and possibility for error involved in handwriting analysis had been tested, published, and subjected to peer review; and (3) his testimony was highly relevant as to the reliability of the handwriting expert's testimony because it would assist the jury in determining the proper weight to accord that testimony. *Id.* at 851-52.

This Court has previously found the *Velasquez* opinion more persuasive than *Paul* because it was "more faithful to the principles and philosophy of the Federal Rules and *Daubert*." *United States v. McCluskey*, CR No. 10-2734 JCH, 2013 WL 12334168, at *7 (D.N.M. Apr. 29, 2013). The Court finds no reason to depart from its previous conclusion based on the authority and record.

As the Supreme Court acknowledged in *Daubert*, one of the "traditional and appropriate means of attacking shaky but admissible evidence" is the "presentation of contrary evidence" as well as vigorous cross-examination. *Daubert*, 509 U.S. at 596. The question of the reliability of expert evidence "is as much for the jury (in the context of courtroom adversary testing) as it is for the court (in the context of a *Daubert* hearing)." *United States v. Mitchell*, 365 F.3d 215, 247 (3d Cir. 2004). A party may use an expert to present background information to the jury and to criticize the reliability of the entire field on which the government presents expert evidence. *McCluskey*, 2013 WL 12334168, at 13, 15. Dr. Scurich's testimony will aid the jury in understanding the issue of the reliability of firearms and toolmark forensic analysis and help the jury evaluate the weight to afford the expert testimony of Mr. Smith. His opinions are thus relevant under Rule 702 and *Daubert*.[1]

### 4. The Court will permit Dr. Scurich to offer expert testimony.

Defendant has met his burden to show that Dr. Scurich is qualified as an expert to offer the opinions set forth in the Notice and at the *Daubert* hearing. The Court finds that Dr. Scurich's opinions are reliable and relevant to issues at trial and will therefore allow Dr. Scurich to testify as an expert witness at trial.

**IT IS THEREFORE ORDERED** that the United States' *Motion to Exclude Testimony of Nicholas Scurich* (**ECF No. 130**) is **DENIED**.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[1] For the reasons given herein, the Court declines to follow the district court cases relied upon by the Government, *see*, *e.g.*, *United States v. Taylor*, 704 F.Supp.2d 1192, 1194 (D.N.M. 2009); *United States v. Randolph*, No. 8:22-cr-145-TPB-AAS, 2024 WL 1703643 (M.D. Fla. Apr. 19, 2024); and *United States v. Hendrix*, CASE NO. CR19-0024JLR, 2020 WL 30342 (W.D. Wash. Jan. 2, 2020).